UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

MICHAEL JAMES EVANS,

                  Plaintiff,

      v.

MICHAEL F. GOWER, Asst. Dir.;
BRIDGETTE AMSBERRY,
Superintendent; ELISABETH FAIRLEY;
HENRY BECERRIL; SARA
BEVINGTON; KELLY RATHS; LINDA
"SCHUTT" SIMON; KAYCIE
THOMPSON; SERENA DEACON;
LARRY LYTLE; SHERRY ILES; GERRY
STEPHENS; DUSTY HUNTER; STEVE
BOSTON; EDDIE LOPEZ; JAY
HORNING; JAMES DEACON; and
STEVE SURBER,

                  Defendants.

Case No. 2:17-cv-01162-MK
**OPINION AND
ORDER**

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Michael James Evans ("Plaintiff") asserts six causes of action under 42 U.S.C. § 1983 against Defendants Gower, Amsberry, Fairley, Becerril, Bevington, Raths, Simon, Thompson, Deacon, Lytle, Iles, Stephens, Hunter, Boston, Lopez, Horning, Deacon, and Surber (collectively, "Defendants"): (1) a First Amendment claim against Defendants Amsberry, Fairley, Lytle, and Boston; (2) a First Amendment claim and Sixth Amendment claim against Defendants Thompson, Iles, Amsberry, and Simon; (3) a First Amendment claim and Fourteenth Amendment claim against Defendants Thompson, Iles, Amsberry, Stephens, Raths, and Simon; (4) a First Amendment claim, Fourth Amendment claim, and Fourteenth Amendment claim against Defendants Thompson, Iles, Amsberry, Bevington, Deacon, Becerril, Gower, and Raths; (5) a First Amendment claim, Fourth Amendment claim, and Fourteenth Amendment claim against Defendant Surber; and (6) a First Amendment claim against Defendants Lopez, Horning, and Deacon. Fifth Am. Compl., ECF No. 125 ("FAC").

Plaintiff moves for summary judgment on all of his claims. Pl.'s Mot. Summ. J., ECF No. 150. Defendants also move for summary judgment on all of Plaintiff's claims. Defs.' Mot. Summ. J., ECF No. 185 ("Defs.' Mot."). All parties have consented to jurisdiction by a U.S. Magistrate Judge. *See* ECF No. 83. For the reasons that follow, Plaintiff's motion is DENIED and Defendants' motion is GRANTED in part and DENIED in part.

## FACTS

Plaintiff is an adult in custody ("AIC") of the Oregon Department of Corrections ("ODOC") at Two Rivers Correctional Institution ("TRCI"). FAC ¶ 1, ECF No. 125.

### I.    First Claim

On May 18, 2016, Plaintiff asked for the law library sign-up sheet during a two-way line movement. Plaintiff's Declaration ("Pl.'s Decl.") ¶ 2, ECF No. 151. Defendant Fairley, the

correctional officer in charge, told Plaintiff to wait until the line movement was over. *Id.* ¶ 4–5. Plaintiff claims he waited until the line movement was over and asked for the sign-up sheet again. *Id.* Defendant Fairley then issued Plaintiff a "cell-in" conduct order. *Id.* ¶ 5.

Plaintiff filed a grievance based on the May 18, 2016 conduct order. Decl. of Arnell Eynon, Ex. 4 at 10, ECF No. 186 ("Eynon Decl."). Defendant Lytle responded to Plaintiff's grievance that Defendant Fairley's conduct was within the scope of her authority. *Id.* at 7–8. When Plaintiff filed an appeal, the assistant superintendent responded that, during two-way line movements, "staff is required to be as observant as possible to the complete unit to maintain a safe and secure environment." *Id.* at 5–6. Accordingly, a staff member "has the discretion to either assist [an] inmate during this time or have [the inmate] wait until the line movement is completed." *Id.* If an AIC "continue[s] to distract the staff, progressive discipline may be used." *Id.* The assistant superintendent concluded that staff had "performed their duties and responsibilities appropriately." *Id.*

Plaintiff appealed again. *Id.* at 2, 4. The reviewing administrator concurred with the assistant superintendent's response and explained that "providing a safe and secure environment for all" requires "slowing down some activities to ensure [staff members] are meeting these goals." *Id.* at 1. Because "[t]wo-way line movements are very busy and active[,]" the administrator explained that each staff member has discretion to assist an AIC during the line movement or have the AIC wait until the line movement is complete. *Id.* The administrator concluded, based on "the information that has been provided, it is clear that the staff at TRCI conducted their duties in a professional manner[.]" *Id.*

In October 2016, Plaintiff filed an internal discrimination complaint against Defendant Fairley. Eynon Decl., Ex. 11 at 5, ECF No. 186. Plaintiff alleged Defendant Fairley wrongfully

celled Plaintiff in because he ate a cookie offered by another inmate. *Id.* Plaintiff also alleged Defendant Fairley only issued cell-in conduct orders to white AICs for requesting the law library sign-up sheet. *Id.* In response, Defendant Amsberry, TRCI Superintendent, wrote that the alleged cookie issue could not be substantiated. *Id.* at 3. Defendant Amsberry also wrote that the investigation did not support Plaintiff's allegations that cell-in orders were limited to white AICs. *Id.* at 4. Finally, Defendant Amsberry acknowledged that the Housing Unit Guidelines allow for sign-ups during two-way line movements. *Id.* However, Defendant Amsberry noted that the sign-up times may be slightly altered due to safety and security concerns and explained that sign-ups "are also permitted throughout most of the dayroom hours each day, providing an opportunity for all inmates to sign up for the law library." *Id.*

Plaintiff appealed Defendant Amsberry's decision to the Inmate Discrimination Review Committee. *Id.* at 2. The inspector general responded that the Committee had considered the appeal and found no reason to change the original decision. *Id.* at 1.

## II.    Second Claim

Plaintiff alleges that several items of legal mail were opened outside his presence, specifically: (1) two items from Noel Grefenson dated March 3, 2015; (2) one item from Eric Beach dated August 24, 2015; (3) two items from Kasey Curtis dated November 30, 2016; (4) one item from Kasey Curtis dated March 10, 2016; and (5) one item from Kasey Curtis dated April 20, 2017. FAC ¶ 37, ECF No. 125.

ODOC regulation 291-131-0030 requires legal mail to be clearly marked with the words "LEGAL MAIL."[1]

---

[1] "(a) To qualify for special processing, mail which otherwise qualifies as legal or official mail under OAR 291-131-010(14) or (18) must have affixed to the addressee side of the envelope or parcel the words 'LEGAL MAIL' or 'OFFICIAL MAIL', as appropriate. The 'LEGAL MAIL' or 'OFFICIAL MAIL' designation should be set apart from both the return address and the mailing address, and should be of sufficient size, to permit easy recognition by

### A.    Mail from Noel Grefenson

On April 1, 2015, Plaintiff filed a grievance regarding the opening of two pieces of mail from attorney Noel Grefenson. Eynon Decl., Ex. 1 at 10, ECF No. 186. Plaintiff attached one of the items, which was stamped "Legal Correspondence." *Id.* at 11. The envelope indicated that the mail had been opened by mailroom staff because it "[did] not meet DOC requirements as 'Legal Mail' 291-131-0030(a)." *Id.* The grievance was denied based on ODOC regulation 291-131-0030. *Id.* at 9. Plaintiff appealed the denial, arguing the mail should not have been opened because "correspondence" is synonymous with "mail." *Id.* at 6. The denial was sustained on administrative appeal, with the final appeal response being issued on June 19, 2015. *Id.* at 1, 7.

### B.    Mail from Eric Beach

On August 24, 2015, Plaintiff filed a grievance regarding the opening of mail from attorney Eric Beach. Eynon Decl, Ex. 2 at 6, ECF No. 186. The mail was labeled as "Legal Mail." *Id.* at 7. ODOC initially determined that the mailroom had no record of opening the mail, *id.* at 5, and Plaintiff appealed, *id.* at 4. After investigating, ODOC determined the mail had been opened accidentally by staff in the mailroom. *Id.* at 1, 3. The administrator acknowledged the error and wrote, "staff did not read the contents, they only scanned the mail for contraband such as unauthorized attachments and enclosures." *Id.* at 1. The administrator also added that mailroom staff received "additional training on the appropriate application of the rule regarding legal mail processing in order to address the issue and prevent any further occurrences of this nature." *Id.*

### C.    Mail from Kasey Curtis

---

facility mailroom employees. (b) Mail which otherwise qualifies as legal and official mail under OAR 291-131-010(14) or (18) but lacks the proper designation shall be processed as ordinary mail (i.e., shall be subject to inspection; e.g., opening, examination, reading or photocopying) outside the inmate's presence." Or. Admin. R. 291-131-0030(1) (2011); *see also* Eynon Decl. Ex. 1 at 8–9, ECF No. 186.

In November 2016, Plaintiff filed a grievance regarding the opening of mail from attorney Kasey Curtis. Eynon Decl., Ex. 5 at 2, ECF No. 186. The grievance was denied because the item was not marked "Legal Mail." *Id.* at 1. There is no indication Plaintiff appealed the grievance.

In March 2017, Plaintiff filed grievance regarding the opening of different mail from attorney Kasey Curtis. Eynon Decl., Ex. 7 at 8, ECF No. 186. The grievance was denied through all appeals because the item was not marked "Legal Mail." *Id.* at 3, 6.

In April 2017, Plaintiff filed a grievance regarding the opening of different mail from attorney Kasey Curtis. Eynon Decl., Ex. 9 at 6, ECF No. 186. The grievance was denied through all appeals because the item was not marked "Legal Mail." *Id.* at 1, 3, 5.

Plaintiff alleges all letters from Kasey Curtis were marked as "Attorney-Client Communication." Pl.'s Suppl. Decl. ¶ 13, ECF No. 153-1.

### III.   Third Claim

Plaintiff alleges Defendants delayed his mail or failed to provide timely notice regarding withheld mail. *See* FAC ¶¶ 44–61, ECF No. 125.

#### A.   Documents

A power of attorney document from Plaintiff's mother arrived at ODOC on November 18, 2015, which Plaintiff received on or about November 24, 2015. Pl.'s Decl. ¶ 35, ECF No. 151. There is no indication Plaintiff filed a grievance regarding this document.

Three envelopes with documents from Plaintiff's fiancée arrived at ODOC on November 10, 2015, which Plaintiff received on or about December 1, 2015. Pl.'s Decl., Ex. 21, 23, ECF No. 151-2. There is no indication Plaintiff filed a grievance regarding these documents.

Plaintiff alleges that he never received a Christmas card and investment papers sent to him. FAC ¶¶ 53–54, ECF No. 125. On December 22, 2016, Plaintiff inquired about investment papers and "other mail" that he claimed were mailed to him on December 12, 2016. Thompson Decl., Ex. 4 at 1, ECF No. 191. Defendant Thompson explained that the postal service was experiencing delays due to the holiday season and road closures. *Id.* Plaintiff later inquired again, and Defendant Deacon responded that ODOC did not "have anything in the mailroom" matching Plaintiff's description. Pl.'s Decl., Ex. 25, ECF No. 151. Plaintiff offers no evidence that the items were ever received by ODOC.

### B.    Books

A book called *Born into the Children of God* arrived at ODOC seven days before Plaintiff received it on February 16, 2016. Pl.'s Decl. ¶ 37. ECF No. 151. There is no indication Plaintiff filed a grievance regarding this book.

A book called *Love Affair* arrived at ODOC and had been rejected. Declaration of Kaycie Thompson, Ex. 2 at 4, ECF No. 191 ("Thompson Decl."). On or about March 2016, Plaintiff received a publication violation notice indicating that the book was rejected for containing sexually explicit material. *Id.* Plaintiff requested administrative review of the rejection, and the violation was affirmed. *Id.* at 1, 2. There is no indication Plaintiff filed a grievance regarding the lack of notification, as opposed to his grieving the substance of the rejection.

A book called *Natural Young Beauties* arrived at ODOC in January 2011 and was rejected. Pl.'s Decl., Ex. 28 at 25–27, ECF No. 151. On or about March 2017, Plaintiff received a publication violation notice. Thompson Decl., Ex. 5, ECF No. 191. Plaintiff filed a grievance alleging he did not receive proper notice. Eynon Decl., Ex. 8 at 6, ECF No. 186. Defendant Amsberry noted that Plaintiff received a review of the book on March 20, 2017, and explained

that "[d]epending on the amount of reviews and workload that comes into the mailroom, the processing time can be delayed." *Id.* at 3. Plaintiff's grievance was denied at all stages of his appeal. *Id.* at 1.

## IV.    Fourth Claim

Plaintiff alleges ODOC wrongfully rejected several of Plaintiff's mail items. FAC ¶ 71, ECF No. 125.

### A.    *Love Affair*

On March 28, 2016, Plaintiff received a publication violation notice for *Love Affair*. Thompson Decl., Ex. 2 at 4, ECF No. 191. The cover of the book describes it as "a memoir of a forbidden father-daughter union." *Id.* at 5. The book was rejected because it contained sexually explicit material, specifically: (1) "Portrayal of actual simulated acts or threatened acts of force or violence in a sexual context, including but not limited to forcible intercourse (rape) or acts of sadomasochism emphasizing the infliction of pain;" and (2) "Portrayal of actual or simulated sexual acts or behaviors in which one of the participants is a minor, or appears to be under the age of 18." *Id.* at 4. Plaintiff requested administrative review, *id.* at 2, and the violation was affirmed, *id.* at 1. At the time of the review, *Love Affair* was already on ODOC's list of rejected publications. *Id.* at 1, 18.

### B.    *Natural Young Beauties*

On March 1, 2017, Plaintiff received a mail notice for a rejected book, *Natural Young Beauties*, on the ground that it contained "[s]exually explicit material that by its nature or content poses a threat or is detrimental to the security, good order or discipline of the facility, inmate rehabilitation, or facilitates criminal activity." Thompson Decl., Ex. 5, ECF No. 191. Plaintiff sought administrative review of the rejection, and Defendant Simon affirmed the rejection.

Eynon Decl., Ex. 8 at 3, ECF No. 186. Plaintiff then sent a communication that was forwarded to Defendant Raths. Eynon Decl., Ex. 6 at 4, ECF No. 186.

In April 2017, Defendant Raths explained to Plaintiff that *Natural Young Beauties* was on the rejected publication list due to: (1) "Portrayal of actual or simulated sexual acts or behaviors between human beings, including, but not limited to, intercourse, sodomy, fellatio, cunnilingus, or masturbation;" (2) "Portrayal of actual or simulated penetration of the vagina or anus, or contact between the mouth and the breast, genitals, or anus;" (3) "Portrayal of actual or simulated stimulation of the breast, genitals, or anus;" (4) "Portrayal of actual or simulated acts or threatened acts of force or violence in a sexual context, including but not limited to forcible intercourse (rape) or acts of sadomasochism emphasizing the infliction of pain;" and (5) "Portrayal of actual or simulated sexual acts or behaviors in which one of the participants is a minor, or appears to be under the age of 18." *Id.*

### C.    Correspondence

Plaintiff alleges four letters from his fiancée were rejected: one in February 2016; two in August 2016; and one in December 2016. FAC ¶ 71, ECF No. 125.

On February 18, 2016, Plaintiff received a notice of mail violation regarding a letter from Plaintiff's fiancée. Thompson Decl., Ex. 1 at 2–3, ECF No. 191. The letter was rejected for being sexually explicit, specifically for: (1) "Portrayal of actual or simulated sexual acts of behaviors between human beings, including, but not limited to, intercourse, sodomy, fellatio, cunnilingus, or masturbation;" (2) "Portrayal of actual or simulated penetration of the vagina or anus, or contact between the mouth and the breast, genitals, or anus;" and (3) "Portrayal of actual or simulated stimulation of the breast, genitals, or anus." *Id.* at 2.

On August 9, 2016, Plaintiff received another notice of mail violation regarding a sexually explicit letter from his fiancée. Pl.'s Decl., Ex. 40 at 4–5, ECF No. 151. On August 25, 2016, Plaintiff received another notice of mail violation regarding a sexually explicit letter from his fiancée. *Id.* at 6–7. In September 2016, ODOC conducted an administrative review regarding a sexually explicit letter and affirmed the violation notice. *Id.* at 6.

On December 16, 2016, Plaintiff received another notice of mail violation regarding a sexually explicit letter from his fiancée. Thompson Decl., Ex. 3, ECF No. 191. Plaintiff sought administrative review of the letter, and the violation was affirmed. Pl.'s Decl., Ex. 40 at 9, Ex. 47 at 7, ECF No. 151-2.

## V.    Fifth Claim

On December 10, 2017, Defendant Surber found a book titled *The Ten Thousand* during a routine search of Plaintiff's cell. Decl. of Jeremy Nofziger, Ex. 2 at 1, ECF No. 190 ("Nofziger Decl."). Defendant Surber confiscated the book because Plaintiff had removed the mailroom identification label from the book and written his own name on the mailroom stamp. *Id.* at 1, 4– 5. Plaintiff did not have a receipt for the book. *Id.* at 4. Plaintiff maintains that he received the book in 2007 before the implementation of the "mailroom stickers" in 2016. Pl.'s Decl. ¶ 69, ECF No. 151. Defendant Surber offered Plaintiff an opportunity to voluntarily destroy the book, but Plaintiff refused and threatened to sue Defendant Surber. Nofziger Decl., Ex. 2 at 4, ECF No. 190.

Defendant Surber wrote a misconduct report charging Plaintiff with violations of ODOC's Property II and Contraband II rules. *Id.* While the hearing officer dismissed the Contraband II charge, the hearing officer found that Plaintiff violated the Property II rule by "destroying, abusing, altering, damaging, defacing, misusing, tampering with, or wasting

materials or property, or failing to properly protect or produce property issued in a timely

manner." *Id.* at 1. Plaintiff was sanctioned with three days loss of privileges, a fifteen-dollar fine,

and loss of the book. *Id.* at 1–2.

On December 10, 2017, Plaintiff filed a grievance regarding Defendants' confiscation of

his book. Eynon Decl., Ex. 10 at 2, ECF No. 186. The grievance was denied on the grounds that

Plaintiff had not established a lack of administrative directive or operational procedure, the

misapplication of one, or unprofessional conduct or oversight by staff. *Id.* at 1. The denial cited

the rule requiring AICs to retain receipts and not alter personal property. *Id.* The denial also

noted that AICs are not allowed to grieve misconduct reports under ODOC regulation 291-109-

0140. *Id.* There is no indication that Plaintiff appealed this denial.

## VI.    Sixth Claim

On January 17, 2017, Plaintiff took a shower between the hours of 9 and 10 in the

morning. Nofziger Decl., Ex. 1 at 13, ECF No. 190; Pl.'s Decl. ¶ 82, ECF No. 151. At that time,

Plaintiff had a skin lesion on his head that occasionally bled, and may have bled while he

showered. *Id.* ¶ 91. Shortly after Plaintiff's shower, Defendant Lopez observed what he believed

to be blood in the shower. Nofziger Decl., Ex. 1 at 11, ECF No. 190. Plaintiff denies that it was

his blood, suggesting instead it may have been the soap he used. Pl.'s Decl. ¶¶ 84–85, ECF No.

151.

After his shower, Defendant Lopez approached Plaintiff while Plaintiff was in the law

library and asked Plaintiff about the brown substance in the shower. *See* Nofziger Decl., Ex. 1 at

9, 11, ECF No. 190. Plaintiff claims Defendant Lopez initially suggested it was feces, but then

noticed dried blood on Plaintiff's head from his skin lesion and concluded it was blood. Pl.'s

Decl. ¶¶ 86–91, ECF No. 151. Defendant Lopez then issued a conduct order to Plaintiff for

leaving blood in the shower and sanctioned Plaintiff with a 24-hour cell-in order. Nofziger Decl., Ex. 1 at 11, ECF No. 190. Defendant Lopez noted the time of the incident as 10:30 a.m. *Id.*

On June 19, 2017, Plaintiff left his cell at 10:00 a.m., 30 minutes before his 24-hour cell-in order expired. *Id.* at 7. Plaintiff alleges he thought the sanction ended at or before 10 a.m., because his shower had occurred before 10 a.m. the previous day. Pl.'s Decl. ¶¶ 101, 103, ECF No. 151. Defendant Horning observed Plaintiff leaving his cell before 10:30 a.m. and wrote a misconduct report, charging Plaintiff with Disobedience of an Order I and Unauthorized Area I. Nofziger Decl., Ex. 1 at 6, ECF No. 190. Defendant Deacon found violations of Unauthorized Area I and a reduced charge of Disobedience of an Order II. *Id.* at 3. Plaintiff was sanctioned with ten days segregation, ten subsequent days loss of privilege, and a fine that was suspended pending no major rule violations. *Id.* at 4.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

## DISCUSSION

Plaintiff moves for summary judgment on all of his claims. Pl.'s Mot., ECF No. 150. Defendants also move for summary judgment on all of Plaintiff's claims. Defs.' Mot., ECF No. 185. For the reasons that follow, Plaintiff's motion is DENIED and Defendants' motion is GRANTED in part and DENIED in part.

### I.    First Claim

Defendants argue summary judgment is appropriate as to Plaintiff's First Amendment claim because: (1) Plaintiff cannot show any action was taken because of protected conduct; (2) the conduct order had a legitimate correctional goal; and (3) even if there was some basis for the claim against Defendant Fairley, there is no basis for Plaintiff's claim against Defendants Lytle and Boston. Defs.' Mot. 23–28, ECF No. 185. Plaintiff argues Defendant Fairley took adverse action against Plaintiff because of Plaintiff's protected conduct, Defendant Fairley's action had a chilling effect, and Defendant Fairley's action did not advance a legitimate correctional goal. Pl.'s Br. 3–10, ECF No. 151-1. Plaintiff also argues that Defendants Lytle and Boston were deliberately indifferent to Defendant Fairley's retaliatory conduct. Pl.'s Suppl. Decl. ¶ 12, ECF No. 153-1.

To state a viable claim of First Amendment retaliation, a plaintiff must allege five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).

To satisfy the causation requirement, a plaintiff "must allege a causal connection between the adverse action and the protected conduct." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). "To show the presence of this element on a motion for summary judgment, [a plaintiff] need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [a defendant's] intent[.]" *Brodheim*, 584 F.3d at 1271 (citation omitted). Mere speculation that a defendant acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). However, "timing can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

To sufficiently allege that prison authorities' retaliatory action did not advance a legitimate correctional goal, a plaintiff must show, "in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were unnecessary to the maintenance of order in the institution." *Watison*, 668 F.3d at 1114 (internal quotations and citations omitted). "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806.

To determine whether an adverse action is reasonably related to legitimate penological interests, the Supreme Court established the following four-factor test:

> First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in its favor. In addition, courts should consider

> three other factors: the existence of "alternative means of
> exercising the right" available to inmates; "the impact
> accommodation of the asserted constitutional right will have on
> guards and other inmates, and on the allocation of prison resources
> generally"; and "the absence of ready alternatives" available to the
> prison for achieving the governmental objectives.

*Shaw v. Murphy*, 532 U.S. 223, 230–31 (2001) (quoting *Turner v. Safley*, 482 U.S. 78, 107

(1987)) (bracketing in original; internal citations omitted).

A defendant "may not defeat a retaliation claim on summary judgment simply by

articulating a general justification for a neutral process, when there is a genuine issue of material

fact as to whether the action was taken in retaliation for the exercise of a constitutional right."

*Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003). If prison officials abuse what is otherwise a

legitimate correctional goal "as a cover or a ruse to silence and punish [a plaintiff] because he

filed grievances, they cannot assert that [their actions] served a valid penological purpose[.]" *Id.*

Here, Plaintiff has failed to offer any evidence that rises above mere speculation to show

Defendants acted out of a retaliatory motive. *See Wood*, 753 F.3d at 899. There is no indication

that Defendant Fairley issued Plaintiff a conduct order because Plaintiff wished to use the law

library. All evidence provided to the Court indicates that Defendant Fairley issued Plaintiff a

conduct order because he made a request during a two-way line movement, not for the substance

of his request. Plaintiff has also failed to offer any evidence showing the absence of legitimate

correctional goals. *See Pratt*, 65 F.3d at 806. Defendants repeatedly informed Plaintiff that, to

maintain a safe and secure environment, staff have discretion regarding whether to assist inmates

during a two-way line movement. *See, e.g.*, Eynon Decl., Ex. 4 at 10, ECF No. 186. Defendants

have met their burden of establishing the absence of a genuine issue of material fact. Viewing

these facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his

favor, no reasonable jury could conclude that Defendants acted out of retaliatory motive for

Plaintiff's protected conduct or that Defendants had no legitimate correctional goals for their actions. As such, Defendants' motion is granted as to Plaintiff's First Claim.

## II.   Second Claim

Defendants argue summary judgment is appropriate as to Plaintiff's First Amendment and Sixth Amendment claims because: (1) the Sixth Amendment does not apply to civil counsel; (2) the statute of limitations bars claims from March 2015; (3) Plaintiff has failed to exhaust his administrative remedies for at least one letter; (4) all but one of the letters were not marked as "Legal Mail" and therefore did not require treatment as legal mail; (5) the August 2015 mail opening incident was an isolated incident; and (6) there is no evidence of personal participation in the alleged violations by named Defendants in the opening of mail from attorney Beach. Defs.' Mot. 23–33, ECF No. 185. Plaintiff argues Defendants improperly opened and read his mail outside of his presence. Pl.'s Br. 10–14, ECF No. 151-1. Plaintiff also argues ODOC's "Legal Mail" rule is unconstitutional on its face. Pl.'s Suppl. Decl. ¶ 24, ECF 153-1.

### A.   First Amendment

Generally, prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). "Jails and prisons may impose certain restrictions on incoming mail, so long as the restrictions are 'reasonably related to legitimate penological interests.'" *Mangiaracina v. Penzone*, 849 F.3d 1191, 1197 (9th Cir. 2017) (quoting *Safley*, 482 U.S. at 89). The Ninth Circuit "recognize[s] that prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017). However, a plaintiff must "clarify who sent the mail or whether it was properly marked as 'legal mail.'" *Id.*

ODOC regulation 291-131-0030 requires legal mail to be clearly marked with the words

"LEGAL MAIL":

> (a) To qualify for special processing, mail which otherwise
> qualifies as legal or official mail under OAR 291-131-010(14) or
> (18) must have affixed to the addressee side of the envelope or
> parcel the words "LEGAL MAIL" or "OFFICIAL MAIL", as
> appropriate. The "LEGAL MAIL" or "OFFICIAL MAIL"
> designation should be set apart from both the return address and
> the mailing address, and should be of sufficient size, to permit easy
> recognition by facility mailroom employees. (b) Mail which
> otherwise qualifies as legal and official mail under OAR 291-131-
> 010(14) or (18) but lacks the proper designation shall be processed
> as ordinary mail (i.e., shall be subject to inspection; e.g., opening,
> examination, reading or photocopying) outside the inmate's
> presence.

Or. Admin. R. 291-131-0030(1); *see also* Eynon Decl., Ex. 1 at 8–9, ECF No. 186.

  1.  <u>Mail not Marked "Legal Mail"</u>

The question is whether the letters at issue were "properly marked" legal mail such that

Plaintiff had a protected First Amendment interest in having these letters opened only in his

presence. *See Hayes*, 849 F.3d at 1211. Since *Hayes*, the Ninth Circuit has left open the question

of what exactly constitutes "properly marked" legal mail. *See generally Merrick v. Linderman*,

858 Fed. App'x 250, 252 (9th Cir. Sept. 13, 2021) (finding summary judgment proper where

"[n]othing on the face of the letter, which was returned from the Post Office without the original

envelope, indicated that the letter was legal mail or that the intended recipient was a lawyer").

The mail items from attorney Noel Grefenson were marked as "Legal Correspondence."

Eynon Decl., Ex. 1 at 11, ECF No. 186. The mail items from attorney Kasey Curtis were marked

as "Attorney-Client Communication." Pl.'s Suppl. Decl. ¶ 13, ECF No. 153-1. A reasonable jury

could conclude that letters marked with words and phrases such as "legal" and "attorney-client"

were sufficient to put Defendants on notice that Plaintiff's mail was, in fact, properly marked

legal mail that complied with applicable regulations. Because a genuine issue of material fact exists, neither party has met their burden for summary judgment.

Defendants nevertheless argue that they are entitled to qualified immunity. Defs.' Mot. 51–52, ECF No. 185. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and internal quotations omitted). The purpose of qualified immunity is to "strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson*, 555 U.S. at 231). Qualified immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (citation and internal quotations omitted).

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts may exercise their discretion in deciding which prong to address first "as they are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson*, 555 U.S. at 242.

Whether an official is entitled to qualified immunity "generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citations and internal quotations omitted). "For a right to be 'clearly established,' existing 'precedent must have placed the statutory or constitutional question *beyond debate*,' such that 'every' reasonable official, not just 'a' reasonable official, would have understood that he was violating a clearly established right." *Thompson v. Rahr*, 885 F.3d 582, 587 (9th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (emphasis in original).

In 2017, the Ninth Circuit determined that prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence. *Hayes*, 849 F.3d at 1211. All but two incidents in this case occurred before the *Hayes* decision. As such, Defendants are entitled to qualified immunity as to all mail items from attorneys Grefenson and Curtis received before March 3, 2017.

However, qualified immunity is not appropriate as to the mail from attorney Curtis that Plaintiff received on March 10, 2017, *see* Eynon Decl., Ex. 7 at 8, ECF No. 186, or the mail from attorney Curtis that Plaintiff received on April 25, 2017, Eynon Decl., Ex. 9 at 6, ECF No. 186. After *Hayes*, every reasonable official would have understood they were violating a clearly established right by opening Plaintiff's legal mail outside of his presence. As such, Defendants are not entitled to qualified immunity regarding the two letters from attorney Curtis that Plaintiff received after March 3, 2017.

### 2.  Mail Marked "Legal Mail"

The mail from attorney Eric Beach was properly labeled as "Legal Mail" as required by OAR 291-131-0030(1). Eynon Decl, Ex. 2 at 7, ECF No. 186. The mail was accidentally opened

by staff in the mailroom, who "did not read the contents, [but] only scanned the mail for contraband such as unauthorized attachments and enclosures." *Id.* at 1–3. Mailroom staff subsequently received "additional training on the appropriate application of the rule regarding legal mail processing in order to address the issue and prevent any further occurrences of this nature." *Id.* Given that a genuine issue of material fact exists as to two letters Plaintiff received from attorney Curtis after March 3, 2017, Defendants' arguments that the opening of mail from attorney Beach was an isolated incident are unavailing. As such, summary judgment is inappropriate as to the mail Plaintiff received from attorney Beach.

In sum, Defendants' motion is granted as to the First Amendment claim contained in Plaintiff's Second Claim concerning mail received before March 3, 2017. However, Defendants' motion and Plaintiff's motion are denied as to the First Amendment claim contained in Plaintiff's Second Claim concerning mail from attorney Curtis that Plaintiff received on or after March 3, 2017, and mail from attorney Beach.

### B.    Sixth Amendment

The Sixth Amendment guarantees the "Assistance of Counsel" in "all criminal prosecutions." U.S. Const. amend. VI. However, "the Sixth Amendment does not govern civil cases." *Turner v. Rogers*, 564 U.S. 431, 441 (2011); *see also Wolff v. McDonnell*, 418 U.S. 539, 576 (1974) (the Sixth Amendment's "reach is only to protect the attorney-client relationship from intrusion in the criminal setting"). All mail at issue is alleged to have been related to civil matters. FAC ¶ 37, ECF No. 125. As such, Defendants' motion is granted as to the Sixth Amendment claim contained in Plaintiff's Second Claim.

### III.    Third Claim

Defendants argue summary judgment is appropriate as to Plaintiff's First Amendment and Fourteenth Amendment claims because: (1) Plaintiff failed to exhaust his administrative remedies as to all items except *Natural Young Beauties*; (2) to the extent any delays occurred, those delays were reasonable; (3) Plaintiff's Fourteenth Amendment claim fails because Plaintiff received notice that two books were withheld; and (4) there is no evidence of personal participation in the alleged violations by named Defendants. Defs.' Mot. 33–38, ECF No. 185. Plaintiff argues that his letters and books were withheld without adequate notice. Pl.'s Suppl. Decl. ¶ 27, ECF No. 153-1. Plaintiff also argues Defendants' actions did not relate to a legitimate penological interest. *Id.* at ¶ 61; Pl.'s Br. 17, ECF No. 151-1.

To state a civil rights claim under § 1983, plaintiff must allege that (1) a person acting under color of law (2) deprived him of a federal constitutional right. 42 U.S.C. § 1983; *Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011). Plaintiff must show that each named defendant, through their own individual actions, violated Plaintiff's constitutional rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Liability under § 1983 arises upon a showing of personal participation by each defendant, and a supervisor is not liable for the constitutional violations of employees unless the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Supervisory prison officials may be liable under § 1983 if they were 'personally involved in the constitutional deprivation or a sufficient causal connection exists between [their] unlawful conduct and the constitutional violation.'" *Rico v. Ducart*, 980 F.3d 1292, 1303 (9th Cir. 2020) (quoting *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013)). "This causal connection can be established by 'knowingly refusing to terminate a series of acts

by others, which the supervisor[s] knew or should have known would cause others to inflict a constitutional injury.'" *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011))

While Plaintiff names Defendants Thompson, Iles, Amsberry, Stephens, Raths, and Simon for this claim, Plaintiff presents no evidence implicating their personal involvement in causing any delays in Plaintiff's mail or notice of violations. Additionally, to the extent Defendants Thompson, Iles, and Simon are included due to their roles as mailroom supervisors, Plaintiff presents no evidence they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045; *see also* FAC ¶ 59, ECF No. 125. As such, Defendants' motion is granted as to Plaintiff's Third Claim.

## IV.    Fourth Claim

Defendants argue summary judgment is appropriate as to Plaintiff's First Amendment, Fourth Amendment, and Fourteenth Amendment claims because: (1) Plaintiff failed to exhaust his administrative remedies as to at least one of the August 2016 letters; (2) ODOC's rule prohibiting certain sexually explicit material has already been considered and upheld by the Ninth Circuit; (3) ODOC correctly applied the rule to the items at issue; (4) there is no lack of due process in deprivation of property; (5) there is no lack of due process in challenging the prohibition of the items; (6) the Fourth Amendment does not apply to prisoners; and (7) Defendant Gower had no personal participation in any alleged constitutional violations. Defs.' Mot. 38–45, ECF No. 185. Plaintiff argues Defendants improperly censored, seized, and suppressed sexually explicit letters from his fiancée and sexually explicit books. Pl.'s Br. 21, ECF No. 151-1. Plaintiff also argues that Defendants' actions were arbitrary because Defendants permit other items that contain sexually explicit content. *Id.* at 23; Pl.'s Suppl. Decl. ¶ 65, ECF No. 153-1.

## A.      First Amendment

ODOC's mail rules prohibit certain sexually explicit materials, including:

> (i) Portrayal of actual or simulated sexual acts or behaviors between human beings including, but not limited to, intercourse, sodomy, fellatio, cunnilingus, or masturbation. (ii) Portrayal of actual or simulated penetration of the vagina or anus, or contact between the mouth and the breast, genitals, or anus. (iii) Portrayal of actual or simulated stimulation of the breast, genitals, or anus. (iv) Portrayal of actual or simulated acts or threatened acts of force or violence in a sexual context, including but not limited to forcible intercourse (rape) or acts of sadomasochism emphasizing the infliction of pain. (v) Portrayal of actual or simulated sexual acts or behaviors in which one of the participants is a minor, or appears to be under the age of 18. (vi) Beastiality: Portrayal of actual or simulated sexual acts or behaviors between a human being and an animal.

Or. Admin. R. 291-131-0035(1)(a)(C). The rules make an exception for sexually explicit material that "has scholarly value, or general social or literary value." Or. Admin. R. 291-131-0035(1)(e). The Ninth Circuit has held that ODOC's mail rules prohibiting certain sexually explicit materials are rationally related to legitimate penological interests and do not unconstitutionally infringe on inmates' First Amendment rights. *Bahrampour v. Lampert*, 356 F.3d 969, 975–76 (9th Cir. 2004).

Here, ODOC correctly applied its rule to the items at issue. *Love Affair* depicts sexually explicit content subject to the ODOC rule, including descriptions of apparent rape and incest, which constitutes both (1) actual or simulated acts of threatened acts of force or violence in a sexual context, and (2) actual or simulated acts or behaviors in which one of the participants is a minor, or appears to be under the age of eighteen. Thompson Decl., Ex. 2 at 5–15, ECF No. 191. *Natural Young Beauties* shows sexually explicit content subject to the ODOC rule, including actual or simulated acts or behaviors in which one of the participants is a minor, or appears to be under the age of eighteen. Declaration of Michael Yoder, Ex. 2, ECF No. 188 ("Yoder Decl.").

Letters from Plaintiff's fiancée also depict sexually explicit content subject to the ODOC rule, including detailed descriptions of sexual activity such as intercourse, fellatio, masturbation, and penetration. Thompson Decl., Exs. 1, 7, ECF No. 191. All items that were subjected to administrative review had several levels of officials all finding rule violations regarding sexually explicit content. As such, Defendants' motion is granted as to the First Amendment claim contained in Plaintiff's Fourth Claim.

**B.      Fourth Amendment**

In *Hudson v. Palmer*, the Supreme Court held that "the Fourth Amendment has no applicability to a prison cell." 468 U.S. 517, 536 (1984). The Supreme Court further held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell[.]" *Id.* at 526. Here, Plaintiff's claims fail because prisoners do not have an expectation of privacy in their cells. As such, Defendants' motion is granted as to Plaintiff's Fourth Amendment claim contained in Plaintiff's Fourth Claim.

**C.      Fourteenth Amendment**

1.      Loss of Property

Generally, the deprivation of a protected property interest requires a meaningful opportunity to be heard at a meaningful time. *Zinermon v. Burch*, 494 U.S. 113, 126–27 (1990). When a state official's deprivation of property is authorized by established state procedures, regulations, or statutes, a pre-deprivation hearing is typically required. *See id.* at 127, 132; *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985). However, when the alleged deprivation of property arises from an unauthorized action by a prison official, whether intentional or negligent, the Supreme Court "has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Zinermon*, 494 U.S.

at 128; *see also Hudson*, 468 U.S. at 533 ("An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). Oregon provides an adequate post-deprivation remedy for the unauthorized destruction of property through the Oregon Tort Claims Act. *Gutierrez v. Williams*, 505 Fed. App'x 659, 660 (9th Cir. Jan. 17, 2013) (citing Or. Rev. Stat. § 30.260 *et seq.*). Here, because the Oregon Tort Claims Act provides an adequate post-deprivation remedy, Plaintiff fails to state a due process claim for his lost or damaged property.

> 2.  Plaintiff's Challenge to Defendants' Prohibition

"[T]he decision to censor or withhold delivery of correspondence to a prisoner must be accompanied by minimum procedural safeguards." *Krug v. Lutz*, 329 F.3d 692, 697 (9th Cir. 2003) (citing *Procunier v. Martinez*, 416 U.S. 396, 417–18 (1974)). Prisoners have the right to notification when mail is rejected, the right to a reasonable opportunity to protest that decision, and the right to have review conducted by an official other than the original person who rejected the mailing. *Id.*

Here, Plaintiff received written publication and mail violation notices and was afforded an administrative review. Plaintiff thus received all the minimum procedural safeguards that he was due for each mail item at issue. *See Crozier v. Endel*, 446 Fed. App'x 14, 15 (9th Cir. Jul. 26, 2011) (affirming dismissal of prisoner's due process claim because prisoner admitted to receiving notice his erotic magazine was prohibited under applicable regulations and had an opportunity to be heard on the issue).

In sum, Defendants' motion is granted as to the Fourteenth Amendment claim contained in Plaintiff's Fourth Claim.

V.      **Fifth Claim**

Defendants argue summary judgment is appropriate as to Plaintiff's First Amendment,

Fourth Amendment, and Fourteenth Amendment claims because: (1) Plaintiff cannot show any

action was taken because of protected conduct; (2) the conduct order had a legitimate

correctional goal; (3) the Fourth Amendment does not apply to prisoners; and (4) due process

claims cannot be brought for allegedly lost or damaged property. Defs.' Mot. 46–48, ECF No.

185. Plaintiff argues the evidence demonstrates Defendant Surber took adverse action against

Plaintiff because of Plaintiff's protected speech. Pl.'s Br. 25, ECF No. 151-1; Pl.'s Suppl. Decl. ¶

79, ECF No. 153-1.

A.      **First Amendment**

1.   Loss of the Book

The PLRA provides that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a). Congress enacted the PLRA "in the wake of a sharp rise in

prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The PLRA

strengthened the exhaustion requirement so that "[e]xhaustion is no longer left to the discretion

of the district court, but is mandatory." *Id.* at 85 (citation omitted). "Prisoners must now exhaust

all 'available' remedies . . . even where the relief sought—monetary damages—cannot be

granted by the administrative process." *Id.* The exhaustion requirement "applies to all inmate

suits about prison life" that do not involve the duration of a prisoner's sentence. *Nettles v.

Grounds*, 830 F.3d 922, 932 (9th Cir. 2016) (quoting *Porter v. Nussle*, 534 U.S. 516, 532

(2002)).

The PLRA's exhaustion requirement mandates "proper" exhaustion of administrative remedies. *Woodford*, 548 U.S. at 93. Proper exhaustion means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'" *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original). To be available, a remedy must be available "as a practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (citation and internal quotation marks omitted).

A motion for summary judgment is the proper means to raise an AIC's failure to exhaust administrative remedies. *Id.* at 1166. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.*

Plaintiff did not appeal Defendants' denial of his grievance regarding the confiscation of his book. *See* Eynon Decl., Ex. 10 at 1–2, ECF No. 186. As such, Plaintiff failed to exhaust his administrative remedies as required by the PLRA as to his book.

### 2. Misconduct Report

Plaintiff has failed to offer any evidence that rises above mere speculation to show Defendant Surber acted out of a retaliatory motive. *See Wood*, 753 F.3d at 899. Plaintiff's evidence does not support any causal link between Defendant Surber's misconduct report concerning the book and Plaintiff's statement that he intended to sue Defendant Surber. Defendant Surber confiscated the book and offered Plaintiff an opportunity to voluntarily destroy the book before Plaintiff threatened to sue Defendant Surber. Nofziger Decl., Ex. 2 at 1–5, ECF No. 190. Accordingly, Plaintiff cannot show a connection between Defendant Surber's adverse

action and Plaintiff's statement that he intended to sue. Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant Surber acted out of retaliation for Plaintiff's protected conduct. As such, Defendants' motion is granted as to the First Amendment claim contained in Plaintiff's Fifth Claim.

**B.      Fourth Amendment**

As explained, Plaintiff's Fourth Amendment claims fail because prisoners do not have an expectation of privacy in their cells. As such, Defendants' motion is granted as to the Fourth Amendment claim contained in Plaintiff's Fifth Claim.

**C.      Fourteenth Amendment**

As explained, Oregon provides an adequate post-deprivation remedy for the unauthorized destruction of property through the Oregon Tort Claims Act. *Gutierrez*, 505 Fed. App'x at 660 (citing Or. Rev. Stat. § 30.260 *et seq.*). Here, because the Oregon Tort Claims Act provides an adequate post-deprivation remedy, Plaintiff fails to state a due process claim for his lost or damaged property.

As such, Defendants' motion is granted as to the Fourteenth Amendment claim contained in Plaintiff's Fifth Claim.

**VI.      Sixth Claim**

Defendants argue summary judgment is appropriate as to Plaintiff's First Amendment claim because: (1) Plaintiff cannot show Defendant Lopez's actions were taken because of protected conduct; (2) Defendant Lopez's actions had a legitimate correctional goal; and (3) there is no evidence showing Defendants Horning or Deacon violated Plaintiff's First Amendment rights. Defs.' Mot. 48–51, ECF No. 185. Plaintiff argues the evidence demonstrates Defendants took adverse action against Plaintiff because of Plaintiff's protected conduct, which

had a chilling effect on Plaintiff's ability to exercise his First Amendment rights and failed to advance any legitimate correctional goal. Pl.'s Br. 36–43, ECF No. 151-1; Pl.'s Suppl. Decl. ¶¶ 106–110, ECF No. 153-1.

Here, Plaintiff has failed to offer any evidence that rises above mere speculation to show Defendant Lopez acted out of a retaliatory motive. *See Wood*, 753 F.3d at 899. After Defendant Lopez saw blood in the shower, Defendant Lopez came looking for Plaintiff and found him in the law library. *See* Nofziger Decl., Ex. 1 at 11, ECF No. 190. Defendant Lopez's motivation for issuing Plaintiff a conduct order arose before Defendant Lopez even knew Plaintiff was using the law library. Additionally, Plaintiff offers no evidence showing Defendants Horning or Deacon violated Plaintiff's First Amendment rights. Viewing these facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, no reasonable jury could conclude that Defendants acted out of retaliatory motive for Plaintiff's protected conduct. As such, Defendants' motion is granted as to Plaintiff's Sixth Claim.

## CONCLUSION

For the reasons above, Plaintiff's motion for summary judgment (ECF No. 150) is DENIED and Defendants' motion for summary judgment (ECF No. 185) is GRANTED in part and DENIED in part. The Court summarizes the disposition for each claim raised in Defendants' motion for summary judgment as follows:

I.    First Claim

      A.  First Amendment:                                    GRANTED

II.   Second Claim

      A.  First Amendment:

            a.  Mail Received before March 3, 2017:        GRANTED

|  |  |  |  |
|---|---|---|---|
| | b. | Mail Received on or after March 3, 2017: | DENIED |
| | c. | Mail Received from Eric Beach: | DENIED |
| | B. | Sixth Amendment: | GRANTED |
| III. | Third Claim | | |
| | A. | First Amendment: | GRANTED |
| | B. | Fourteenth Amendment: | GRANTED |
| IV. | Fourth Claim | | |
| | A. | First Amendment: | GRANTED |
| | B. | Fourth Amendment: | GRANTED |
| | C. | Fourteenth Amendment: | GRANTED |
| V. | Fifth Claim | | |
| | A. | First Amendment: | GRANTED |
| | B. | Fourth Amendment: | GRANTED |
| | C. | Fourteenth Amendment: | GRANTED |
| VI. | Sixth Claim | | |
| | A. | First Amendment: | GRANTED |

DATED this 10th day of August 2022.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge